# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 6, 2013 Session

### PENNY PARKER v. MIKE LOWERY,[1] ETC., ET. AL.

**Appeal from the Chancery Court for Monroe County**
**No. 16423     Hon. Jerri Bryant, Chancellor**

**FILED-APRIL 26, 2013**

**No. E2012-00547-COA-R3-CV**

AND

### SONYA LYNN, ETC. V. MIKE LOWERY, ETC., ET. AL.

**Appeal from the Chancery Court for Monroe County**
**No. 16692     Hon. Jerri Bryant, Chancellor**

**No. E2012-00565-COA-R3-CV**

This consolidated appeal concerns Director's non-renewal of Teacher's contract, his refusal to recommend her for tenure, and his refusal to schedule a hearing regarding his decision. Upon learning that she had not been recommended for tenure, that her contract would not be renewed, and that Director would not schedule a hearing with the Board, Teacher filed suit, alleging that Director's actions were unlawful and beyond the scope of his duty and that the Board had abdicated its responsibility by allowing Director to act in such a manner. Likewise, Board Member filed suit, alleging that the Board abdicated its responsibilities and that Director's actions were unlawful. The trial court initially ruled in favor of Teacher and Board Member; however, the court altered its judgment to hold that Teacher and Board

---

[1]Mike Lowery's last name was spelled variously throughout the record as either "Lowery" or "Lowry." The proper spelling appears to be "Lowry." However, we will adhere to the spelling of the name as "Lowery" for consistency purposes because that is how it is listed on the cover sheet and elsewhere throughout the technical record.

Member did not have standing to bring their respective complaints. Teacher and Board Member appeal. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellants, Penny Parker and Sonya Lynn, individually and in her professional capacity as a member of the Monroe County Board of Education.

Arthur F. Knight, III and Jonathan Swann Taylor, Knoxville, Tennessee, for the appellees, Mike Lowery, in his individual and professional capacity as the Director of Schools, and the Monroe County Board of Education.

Kenneth S. Williams, Cookeville, Tennessee, for the appellees, Mike Lowery, in his individual and professional capacity as the Director of Schools; Larry Stein, in his professional capacity as Chairman of the Monroe County Board of Education; and the Monroe County Board of Education.[2]

Charles W. Cagle and Angela C. Sanders, Nashville, Tennessee, for the Amicus Curiae, Tennessee Organization of School Superintendents.

**OPINION**

**I. BACKGROUND**

This appeal involves two complaints that were consolidated. The first complaint was filed by Penny Parker ("Teacher") against the Director of Schools, Mike Lowery ("Director"), and the Monroe County Board of Education ("the Board"). The second complaint was filed by a member of the Board, Sonya Lynn ("Board Member"), against Director; the Chairman of the Board, Larry Stein ("Chairman"); and the Board.

The facts of this case are not in dispute. Teacher was hired as a special education teacher for the 2006-2007 school year at Tellico Plains High School ("TPHS") in Monroe

---

[2]Per Sonya Lynn's request, Arthur F. Knight withdrew from his representation of Mike Lowery, Larry Stein, and the Monroe County Board of Education because of an alleged conflict of interest.

County.  Director renewed her contract for the following two years.  Having completed three years of teaching, Teacher was eligible for tenure.  In March 2009, Russell Harris, principal of TPHS, informed Teacher by letter that she would not be re-hired for the upcoming school year.  Likewise, Director sent Teacher a letter, which provided, in pertinent part,

> This letter is your official notification that you have not been employed as teacher at Tellico Plains High School for the 2009-2010 school year.
>
> Thank you for your service in the Monroe County School System.  Best wishes for your future endeavors.

Director also informed Teacher that he was not recommending her for tenure.  Teacher asked Director to schedule a hearing with the Board, but he refused.  He advised her to submit an employment application for the 2009-2010 school year, but despite continued efforts, she was not hired.

Teacher filed suit against Director and the Board, alleging, inter alia,[3] that Director exceeded his authority and that the Board had unlawfully abdicated its authority to decide tenure matters.  Director and the Board (collectively "Defendants") denied any wrongdoing and filed a motion for summary judgment.  Defendants asserted that any claim regarding the denial of tenure should be dismissed because it was within the prerogative of Director whether to recommend teachers to the Board, which was then tasked with determining whether those recommended should receive tenure.  Teacher responded by asserting that the Board was ultimately responsible for determining which teachers should receive tenure and that Director violated established policy, which provided, in pertinent part,

> The director of schools is under no obligation to re-employ nontenured teachers at the end of their contract period.  If the director of schools determines not to renew the contract of a non-tenured teacher, the following action shall be taken:
>
> > 1. The Board shall be notified at the next regular board meeting; and
> >
> > 2. Written notice of non-renewal shall be hand delivered or sent to the employee by registered mail so that it will be received by the employee prior to April 15.

---

[3]Teacher raised a myriad of issues in her complaint that were summarily denied by the trial court and not raised as issues on appeal.

Teacher also asserted that the notice she received from Director was insufficient pursuant to Tennessee Code Annotated section 49-5-409, which provided, in pertinent part,

> (a) Teachers in service and under control of the public elementary and high schools of this state shall continue in such service until they have received written notice from their board of education or director of schools, as appropriate, of their dismissal or failure of reelection.

> (b)(1) The notice shall contain a statement of prior authorization by a majority vote of the membership of the board with the name of the teacher being recorded in the minutes of the board.

Meanwhile, Board Member also filed suit against Director, Chairman, and the Board (collectively "Defendants II"). Board Member alleged, inter alia,[4] that the Board had relinquished its authority by allowing Director to make decisions regarding tenure without interference from the Board. She complained that as a result of the Board's refusal to become involved in such decisions, Teacher, who was certified, was not granted tenure and was replaced by a non-certified teacher. Defendants II denied wrongdoing and filed a motion for summary judgment, alleging that Board Member did not have standing because she was not the one who had suffered the alleged injury and because the court was unable to fashion appropriate relief for the alleged injury that she raised in her complaint. They alternatively alleged that her claim was without merit because "[a]bsent [] Director's recommendation, the [] Board ha[d] no power to reemploy and grant tenure to an eligible teacher."

The trial court denied the motion for summary judgment in Board Member's case, finding "that material facts are in dispute as to whether or not the [Board] ha[d] a duty to review and vote upon all teachers who are eligible for tenure, regardless of whether such teachers are recommended to the [Board] for tenure by [Director]." Thereafter, the court continued the case, finding that its decision in Teacher's case would likely be dispositive of Board Member's case.

The trial court ruled in favor of Teacher and Board Member, finding that the written noticed provided by Director

> was deficient in that it did not contain a statement of prior authorization by the majority vote of membership of the [Board.]

---

[4]Board Member raised a myriad of issues in her complaint that were summarily denied by the trial court and not raised as issues on appeal.

The court also found that Director failed to comply with the Board's policy because he did not notify the Board of his decision to not renew Teacher's contract. The court held that pursuant to Tennessee Code Annotated section 49-2-203, Director's failure to notify the Board deprived the Board of its "power to elect teachers" and its ability to provide a reason for the denial and offer an opportunity for a hearing. The court also specifically noted that the failure to notify the Board deprived Teacher of the opportunity to request a hearing and Board Member of the opportunity to exercise her individual responsibilities as a member of the Board. The court directed the parties to provide briefing on the issue of damages.

Despite the court's direction, Defendants filed a motion to alter or amend the court's orders. Defendants asserted that the statute relied upon by the trial court had no application to the case and that Director's failure to alert the Board was merely an oversight that did not give rise to a claim. Surprisingly, the court entered an order in each case, providing, in pertinent part,

> The court had previously found in this matter that [Director] had not followed [Tennessee Code Annotated section 49-2-203]. As a result of [his] failure to follow that statute, the Board [] was never notified of [the decision] not to recommend [Teacher] for tenure. There is no proof in this matter that the Board would have acted one way or the other had they exercised their discretionary power to grant a hearing [] and to hold otherwise would be speculation on behalf of the court.

> After reviewing the law in this matter, the court finds that the Board would have been the proper party with standing to raise that issue, and they have not. The issue of standing can be raised at any time.

In so holding, the court dismissed both cases and set aside its earlier judgments. Teacher and Board Member ("Appellants") appeal from the dismissal of their complaints against Defendants and Defendants II ("Appellees"). This court consolidated the appeals pursuant to Rule 16 of the Tennessee Rules of Appellate Procedure.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the trial court erred in dismissing Teacher's case.

B. Whether the trial court erred in dismissing Board Member's case.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

"The trial court's ruling on a motion to alter or amend will be reversed only for an abuse of discretion." *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). A finding of an abuse of discretion is appropriate "only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that cause[d] an injustice to the complaining party." *See Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

## IV. DISCUSSION

### A. & B.

Appellants assert that the court's sudden reversal of its decision due to an apparent lack of standing was "not in compliance with the laws of Tennessee" when the court had already ruled in their favor. They argue that the court erred in dismissing their respective claims for lack of standing because they suffered "direct harm." Appellees respond that the trial court did not err in altering its judgment and dismissing the complaints. In its amicus brief, the Tennessee Organization of School Superintendents ("TOSS") urges this court to uphold the trial court's dismissal of the complaints because neither complainant had standing to bring her respective claim. TOSS also asserts that the decision whether to renew Teacher's contract was Director's non-delegable duty and claims that Appellants rely upon provisions of law that have been repealed as superfluous pursuant to the passage of the Education Improvement Act of 1991.

A party may file a motion to alter or amend a judgment within 30 days after the entry of the judgment. Tenn. R. Civ. P. 59.04. "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). These

motions should "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* Here, the trial court reversed its decision after finding that it had ruled in favor of each claimant when neither claimant had standing.

The doctrine of standing invokes "whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues." *American Civil Liberties Union of Tennessee v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). In *Darnell*, the Court explained the concept of standing by stating,

> Grounded upon "concern about the proper – and properly limited – role of the courts in a democratic society," the doctrine of standing precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed." The doctrine of standing restricts "[t]he exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, . . . to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."

195 S.W.3d at 619-20 (citations with explanatory information and footnote omitted). In order to establish standing, a claimant

> must show three elements: (1) a distinct and palpable injury, as opposed to a conjectural or hypothetical injury; (2) a causal connection between the claimed injury and the challenged conduct; and (3) the alleged injury is capable of being redressed by a favorable decision of the courts.

*See Lynch v. City of Jellico*, 205 S.W.3d 384, 395 (Tenn. 2006) (citations omitted). The primary focus of a standing inquiry is on the party, not the merits of the claim. *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville and Davidson Cnty.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). The party's standing does not depend on the likelihood of success of his or her claim on the merits. *Id.* Whether a party has standing "often turns on the nature and source of the claim asserted." *Id.* Thus, a "careful judicial examination of the complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted" is required. *Id.*

Each claimant takes issue with the procedure in which Teacher was notified of her non-renewal and of her failure to receive a recommendation for tenure. The gravamen of the complaint in each case rests in the interplay of several statutes in the Tennessee Code Annotated that were effective in 2009, the year in which Teacher received her notice of non-renewal. Tennessee Code Annotated section 49-2-301, provides in pertinent part,

> (b)(1) It is the duty of the board of education to assign to its director of schools the duty to:
>
> * * *
>
> > (J) Recommend to the board teachers who are eligible for tenure or notify such teachers of their failure of reelection pursuant to [section] 49-5-409[.]

Tennessee Code Annotated section 49-2-203 provides, in pertinent part,

> (a) It is the duty of the local board of education to:
>
> > (1) Elect, *upon the recommendation of the director of schools*, teachers who have attained or are eligible for tenure and fix the salaries of and make written contracts with the teachers[.]

(Emphasis added). Tennessee Code Annotated section 49-5-409 provides, in pertinent part,

> (a) Teachers in service and under control of the public elementary and high schools of this state shall continue in such service until they have received written notice from their board of education *or* director of schools, as appropriate, of their dismissal or failure of reelection.
>
> (b)(1) The notice shall contain a statement of prior authorization by a majority vote of the membership of the board with the name of the teacher being recorded in the minutes of the board.[5]

(Emphasis added).

Despite specific provisions providing a procedure in which to recommend and elect teachers for tenure, Teacher had no right of judicial review regarding the non-renewal of her

---

[5]This subsection was deleted in the 2011th session of the 107th General Assembly.

contract and her corresponding failure to receive tenure because she was a probationary employee. *See Cannon Cnty. Bd. of Educ. v. Wade*, No. M2006-02001-COA-R3-CV, 2008 WL 3069466, at *10 (Tenn. Ct. App. July 31, 2008), *perm. app. denied* (Tenn. Feb. 17., 2009) ("[A] non-tenured teacher whose employment is not renewed, i.e., who is not re-elected to a teaching position during his or her probation period, has no right to judicial review of the local school administrators' decision not to renew employment."). Nevertheless, Appellants assert that they were injured by Director's actions and the Board's inaction because Teacher was deprived of a hearing before the Board and because Board Member was deprived of the opportunity to review Director's decisions concerning Teacher. These claims implicate injuries suffered by the Board, not Teacher or Board Member.

Relative to Teacher's claims against Director, Director's failure to seek authorization or provide notice to the Board deprived the Board of its "authority to grant itself the right to review a decision not to renew a probationary teacher's employment." *Id.* at *9; *see also* Tenn. Code Ann. § 49-2-203(b)(8) (providing a procedure whereby the Board may conduct a hearing). The statute provides that the Board was authorized to "provide written notice to probationary teachers of specific reasons for failure of reelection" and that the Board must hold a hearing *if* such notice is given and *if* a hearing is requested by the teacher. Tenn. Code Ann. § 49-2-203(b)(8). The decision of whether to provide notice of specific reasons, which would activate Teacher's ability to request a hearing, was within the prerogative of the Board and was not a right that was capable of being withheld by Director.

Relative to Board Member's claim against Director, Director's actions encroached upon the Board's authority. As a member of the Board, she was admittedly deprived of the opportunity to participate in the decision-making process but was not personally aggrieved by Director's actions. *Ray v. Trapp*, 609 S.W.2d 508, 512 (Tenn. 1980) (holding that members of the election commission did not have standing to bring a claim because they did not have an individual personal or property right to assert or defend). Conversely, she may not be held personally responsible for the Board's actions because the duties of the Board "are imposed on the entire board and not on individual members." *State ex rel. Thompson v. Walker*, 845 S.W.2d 752, 759 (Tenn. Ct. App. 1992) (citation omitted). Additionally, she may not represent the Board's interests without establishing third-party standing. *Gray's Disposal Co., Inc. v. Metro. Gov't of Nashville*, 122 S.W.3d 148, 158 (Tenn. Ct. App. 2002) (listing the three criteria that a third-party must satisfy in order to bring a claim on another party's behalf). We also fail to see why this alleged injury should be reviewed by this court when Director is employed by the Board and may simply be removed if he acted without authorization or encroached upon the responsibilities of the Board. Tenn. Code Ann. § 49-2-203(14)(A); *Darnell*, 195 S.W.3d at 619-20.

Relative to the claims against the Board, Director's failure to provide notice prevented the Board from taking part in the decision-making process. We fail to see how Teacher or Board Member may fault the Board for Director's actions. As discussed previously, Teacher and Board Member also did not suffer a personal injury or loss as a result of Director's actions or the Board's inaction. With all of the above considerations in mind, we conclude that the trial court did not abuse its discretion in altering its judgment and dismissing each case for lack of standing.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellants, Penny Parker and Sonya Lynn.

_____
JOHN W. McCLARTY, JUDGE