200 P.3d 748 (2009)
The MARKAM GROUP, INC., P.S., Respondent,
v.
STATE of Washington DEPARTMENT OF EMPLOYMENT SECURITY, Appellant.
No. 26566-8-III.
Court of Appeals of Washington, Division 3.
February 3, 2009.
*749 Marcus Robert Lampson, Unemployment Law Project, Seattle, WA, Charnelle Marie Bjelkengren, Washington State Attorney General's Office, Spokane, WA, for Appellant.
Mark Douglas Kamitomo, The Markam Group Inc., P.S., Spokane, WA, for Respondent.
SWEENEY, J.
¶ 1 An employer must show that an employee was discharged for "misconduct" to avoid paying state unemployment benefits. And that generally requires showing that the conduct/misconduct was intentional. The pertinent findings on review are those made by the commissioner, not those made by the superior court. Here, the commissioner's findings support only the conclusion that the applicant performed her work ineptly and that conclusion would not support a denial of her unemployment benefits. The trial court's decision to deny benefits is not supported by the commissioner's findings and conclusions. We therefore reverse.

FACTS
¶ 2 Stephanie Monroe worked as a legal secretary for The Markam Group, Inc., from June 21, 2004, to July 10, 2006. Markam fired Ms. Monroe because she could not perform her job as required.
¶ 3 Ms. Monroe filed a claim for unemployment benefits with Washington's Employment Security Department (Department) in July 2006. The Department concluded that she was not fired for disqualifying misconduct and awarded her unemployment benefits. Markam appealed to the Department's Office of Administrative Hearings.
¶ 4 An administrative law judge (ALJ) held a hearing, entered findings of fact and conclusions of law, and affirmed the Department's decision. The ALJ found that Markam discharged Ms. Monroe primarily because she lacked the necessary skills to perform her job in accordance with Markam's expectations. And the ALJ concluded that Ms. Monroe "did not intentionally do a bad job ... [or] ignore [Markam's] demands." Commissioner's Record (Comm'r R.) at 62 (Conclusion of Law (CL) 6). She determined, instead, that Ms. Monroe "simply did not have the focus or the wherewithal to perform the job to [Markam's] standards." Comm'r R. at 62 (CL 6). The ALJ concluded that an employee's inability to perform her job well is not misconduct as defined by the Employment Security Act, Title 50 RCW.
¶ 5 Markam petitioned the Department's commissioner to review the ALJ's decision. A review judge in the commissioner's review office reviewed the administrative hearing record and adopted the ALJ's findings and conclusions, except for conclusion of law 4 (concluding that conduct at issue was not willful, deliberate, careless, or negligent). The review judge found that Ms. Monroe "attempted to perform to [Markam's] standards, but was unable to do so." Comm'r R. *750 at 81. And the judge concluded that Ms. Monroe's "inability to do the job does not constitute statutory misconduct." Comm'r R. at 81. The commissioner's review office affirmed the ALJ's decision.
¶ 6 Markam appealed the commissioner's decision to Spokane County Superior Court. Markam complained that the Department erroneously required it to prove that Ms. Monroe's conduct was intentional before the Department would find misconduct. It contended that an employer establishes "misconduct" by showing that the employee violated the employer's rules. Markam maintained that the administrative record supported the conclusion that Ms. Monroe violated its rules. The superior court agreed with Markam that the commissioner's decision was wrong. It entered findings and conclusions and reversed the Department's decision to grant Ms. Monroe unemployment benefits.
¶ 7 The Department and Ms. Monroe appeal the superior court's order.

DISCUSSION

SUPERIOR COURT FINDINGS OF FACT
¶ 8 The Department and Ms. Monroe argue that the pertinent findings are those of the commissioner, not those of the superior court. They urge us to first ignore the findings of the court and then review the court's conclusions de novo. Markam argues that RCW 34.05.574(1) authorizes the findings and conclusions entered by the superior court and that they are superfluous only when they conflict with the agency's findings.
¶ 9 The Washington Administrative Procedure Act, chapter 34.05 RCW, governs our review of a decision by an Employment Security Department commissioner. Verizon Nw., Inc. v. Employment Sec. Dep't, 164 Wash.2d 909, 915, 194 P.3d 255 (2008). We review only the commissioner's decision, not the administrative law judge's decision or the superior court's ruling. Id.; Kelly v. State, 144 Wash.App. 91, 95, 181 P.3d 871, review denied, 165 Wash.2d 1004, 198 P.3d 511 (2008). And our decision is based on only the administrative record before the commissioner. Verizon Nw., 164 Wash.2d at 915, 194 P.3d 255; Kelly, 144 Wash.App. at 95, 181 P.3d 871. We, therefore, do not consider the superior court's findings and conclusions; we sit instead in the same position as the superior court. Verizon Nw., 164 Wash.2d at 915, 194 P.3d 255; Kelly, 144 Wash.App. at 95, 181 P.3d 871.
¶ 10 Markam also argues that the superior court's findings are verities on appeal because they are consistent with the Department's findings. It is mistaken. Again, we neither consider nor defer to a superior court's rulings when we review an administrative decision. Verizon Nw., 164 Wash.2d at 915, 194 P.3d 255; Kelly, 144 Wash.App. at 95, 181 P.3d 871. Our conclusions must be based on the commissioner's findings alone. Kelly, 144 Wash.App. at 95, 181 P.3d 871. And those findings are verities on this appeal because neither Markam nor the Department nor Ms. Monroe assigns error to any of them. See id. at 96, 181 P.3d 871.

DISQUALIFYING MISCONDUCT
¶ 11 We review a commissioner's legal conclusions for error of law. Verizon Nw., 164 Wash.2d at 915, 194 P.3d 255. We may, then, substitute our view for the commissioner's. Id.; Kelly, 144 Wash.App. at 96, 181 P.3d 871. We nonetheless give substantial weight to the commissioner's interpretation of "misconduct," as it is defined under the Employment Security Act because of the agency's special expertise. Verizon Nw., 164 Wash.2d at 915, 194 P.3d 255; Kelly, 144 Wash.App. at 96, 181 P.3d 871.
¶ 12 Markam contends that the commissioner erroneously concluded that Ms. Monroe did not commit "misconduct." It argues that it did not have to show that Ms. Monroe's actions were intentional to be "misconduct." And it argues that Ms. Monroe's actions qualify as misconduct under RCW 50.04.294(1)(a).
¶ 13 Whether an employee's actions constitute misconduct is generally a mixed question of fact and law. Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402-03, 858 P.2d 494 (1993). But there are no questions of fact at issue here because the parties *751 do not assign error to the commissioner's findings. Those findings are, therefore, the facts here on appeal. Id. at 407, 858 P.2d 494. The only question before us is a question of lawwhether Ms. Monroe's actions amount to disqualifying misconduct.
¶ 14 An employee is not entitled to unemployment benefits if he or she is discharged from employment for misconduct. RCW 50.20.066(1). The parties here disagree on the definition of "misconduct." Markam contends that Tapper provides the definition. The Department and Ms. Monroe argue that the definition of misconduct in RCW 50.04.294 applies.
¶ 15 A statutory definition of "misconduct" did not exist when the court decided Tapper, 122 Wash.2d at 408, 858 P.2d 494. The legislature has since adopted a definition of "misconduct." LAWS OF 1993, ch. 483, § 1. And it is that definition that we apply here. See R.D. Merrill Co. v. Pollution Control Hearings Bd., 137 Wash.2d 118, 143, 969 P.2d 458 (1999) (acknowledging that absent a statutory definition, statutory words are given their common law meaning). The effective date of an employee's claim determines which statutory definition of "misconduct" applies. The definition in RCW 50.04.293 applies to claims filed before January 4, 2004. And the definition set out in RCW 50.04.294 applies to claims filed on or after January 4, 2004. Ms. Monroe filed her claim for unemployment after January 4, 2004; therefore, RCW 50.04.294's definition of "misconduct" applies.
¶ 16 "Misconduct" includes, but is not limited to, a number of specific acts set out in the statute. RCW 50.04.294. Most, but not all, require that an employee act deliberately or willfully. RCW 50.04.294(1), (2). Markam is, then, correctan un intentional act can be "misconduct." See RCW 50.04.294(1)(c) (careless or negligent misconduct).
¶ 17 Markam claims, however, that Ms. Monroe committed misconduct as defined by RCW 50.04.294(1)(a). Resp't's Br. at 26. RCW 50.04.294(1)(a) provides that an employee commits misconduct when his or her conduct is a "[w]illful or wanton disregard of the rights, title, and interests of the employer." "`Willful' means intentional behavior done deliberately or knowingly, where you are aware that you are violating or disregarding the rights of your employer or a co-worker." WAC 192-150-205(1). And "`[w]anton' means malicious behavior showing extreme indifference to a risk, injury, or harm to another that is known or should have been known to you. It includes a failure to act when there is a duty to do so, knowing that injury could result." WAC 192-150-205(2). Markam must, then, show that Ms. Monroe's acts were intentional to prove that she committed misconduct.
¶ 18 The facts here do not support the conclusion that Ms. Monroe's conduct was in willful or wanton disregard of Markam's interests. The commissioner found the following relevant facts:
 Ms. Monroe was discharged primarily because "she lacked the skills that were necessary to properly perform her job." Comm'r R. at 60 (Finding of Fact (FF) 2).
 "[S]he did not serve the opposing attorneys in a medical malpractice case." Id. at 61 (FF 3).
 "[S]he did not consistently check her work product. Besides making numerous typographical errors, [she] did not always change the names of parties when she used forms from other cases as templates." Id. (FF 4).
 Ms. Monroe "did not consistently retrieve and record the correct information when she completed interrogatories." Id. (FF 5).
 She "provided information to an adjuster without having the employer's authority to give information to this individual." Id. (FF 7).
 Ms. Monroe "simply did not have the skills that were necessary to fully and properly perform her job in accordance with the employer's expectations." Id. (FF 8).
 She "attempted to perform to the employer's standards, but was unable to do so." Id. at 81.
¶ 19 These findings do not suggest that Ms. Monroe deliberately or even knowingly failed to perform her job duties correctly. *752 They support, instead, the notion that Ms. Monroe tried to perform to Markam's standards but was unsuccessful. The commissioner's findings also do not show that Ms. Monroe acted with wanton disregard for Markam's interests. Ms. Monroe's behavior was not malicious. The findings show that she made mistakes.
¶ 20 Those facts, then, support the commissioner's conclusion that Ms. Monroe's acts were not misconduct. RCW 50.04.294(3) lists certain acts that are expressly excluded from the statutory definition of misconduct. Those acts include "[i]nefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity." RCW 50.04.294(3)(a). Mere incompetence does not constitute statutory misconduct. Id.; Barker v. Employment Sec. Dep't, 127 Wash.App. 588, 594, 112 P.3d 536 (2005). Ms. Monroe was unable to perform her job to Markam's standards because she lacked the skills she needed to properly manage a case. Comm'r R. at 61.
¶ 21 The commissioner's findings support its conclusion that Ms. Monroe was not discharged for misconduct. Accordingly, the commissioner correctly determined that Ms. Monroe is entitled to unemployment benefits.

ATTORNEY FEES
¶ 22 Ms. Monroe requests attorney fees and costs under RCW 4.84.350 and RCW 50.32.160. We may grant a request for attorney fees and costs on appeal when permitted by applicable law. Pruitt v. Douglas County, 116 Wash.App. 547, 560, 66 P.3d 1111 (2003).
¶ 23 RCW 4.84.350(1) allows petitioners to recover attorney fees from a state agency for a successful appeal of an agency action unless a different statute provides otherwise:
Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust.
¶ 24 The Department argues that the exception in RCW 4.84.350 applies here because the Employment Security Act has its own attorney fees statute at RCW 50.32.160. The Department is correct. The Employment Security Act applies to the agency action reviewed in this case. And RCW 50.32.160 states that a claimant must recover reasonable attorney fees and costs from the unemployment compensation administration fund when an appellate court reverses or modifies the decision of the commissioner.
¶ 25 The Department contends that Ms. Monroe is not entitled to fees and costs under RCW 50.32.160 because, if Ms. Monroe prevails on appeal, the commissioner's decision will be affirmednot reversed or modified. We agree. Ms. Monroe is entitled to unemployment benefits and, therefore, we affirm the commissioner's decision. We neither reversed nor modified the commissioner's decision. RCW 50.32.160, then, does not provide a basis for a fee award in this case.
¶ 26 We reverse the trial court and deny fees.
WE CONCUR: KULIK, A.C.J., and KORSMO, J.