**FILED**
**APRIL 23, 2015**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| MARTIN L. MICHAELSON, | ) | No. 33011-7-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMPLOYMENT SECURITY | ) | PUBLISHED OPINION |
| DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | |

BROWN, J. — Martin Michaelson successfully appealed to the Pierce County Superior Court to review the Employment Security Department's Commissioner's decision affirming an order denying him unemployment benefits. We, like the superior court, review the commissioner's ruling that adopted the findings of fact and conclusions of law of the administrative law judge (ALJ). First, Mr. Michaelson contends the commissioner erred in finding his employment was justifiably terminated after he was involved in three chargeable accidents within a year while driving trucks for Food Services of America (FSA). Second, he contends the commissioner erred in concluding his behavior was misconduct disqualifying him from unemployment benefits. Mr. Michaelson argues he was merely negligent in one accident and not at fault in two accidents, and thus no misconduct occurred.

We disagree with Mr. Michaelson's first contention because FSA followed its progressive discipline policy, but we agree with his second argument. We hold the commissioner erred in concluding his negligent behavior in the last year of his ten-year employment was disqualifying misconduct because the record lacks evidence his behavior was of "such degree or recurrence to show an intentional or substantial disregard of [FSA's] interest." RCW 50.04.294(1)(d). Accordingly, we, like the superior court, reverse the commissioner's decision denying unemployment benefits and award attorney fees to Mr. Michaelson under RCW 50.32.160.

## FACTS

Mr. Michaelson was a delivery driver for FSA from August 2003 through March 2013. He received FSA's handbook detailing corporate policy when he was hired. FSA follows a progressive disciplinary policy where a written warning is issued for the first chargeable incident, followed by another written warning and suspension for the second chargeable incident, then termination for the third chargeable incident occurring within a 12-month period. A "chargeable" incident[1] is one where the driver is accountable for the collision. This policy was designed to protect FSA's interests: three accidents in a 12-month period led FSA to believe the potential of further accident was greater, which would cause FSA liability.

First, on May 19, 2012, Mr. Michaelson backed into a car. He claimed he followed FSA's policy of getting out and looking (GOAL) before he began to reverse and

---

[1] "Chargeable" incidents are also referred to as "preventable" incidents by the parties and the ALJ.

2

took other precautions, but he failed to notice a just-parked car behind him too late to stop and caused over $1,000 in damage. FSA determined this accident was chargeable and issued Mr. Michaelson a written warning. Second, on August 24, 2012, Mr. Michaelson rolled back into a car after stopping, costing FSA over $1,300 in damages. He admitted the accident was chargeable and received his second written warning and a work suspension. Third, on March 12, 2013, Mr. Michaelson backed into a loading dock, bending his bumper. He reported the damage to FSA and bent the bumper back into place. FSA determined the March 12 incident was chargeable.

FSA discharged Mr. Michaelson, citing his three chargeable accidents within a 12-month period as the reason. FSA believed it had to protect itself from further damage to property and potential damage to employees and others.

The Employment Security Department (the Department) denied Mr. Michaelson's claim for unemployment benefits, stating "[d]ue to the potential serious consequences and/or frequency of [his] preventable accidents, it is determined [his] actions can not [sic] be deemed simple negligence but rather willful and deliberate misconduct." Clerk's Papers (CP) at 59. Finding Mr. Michaelson's actions were misconduct, an ALJ and a Commissioner's Review Judge affirmed the Department's decision.[2] Mr. Michaelson appealed. The Pierce County Superior Court reversed, deciding misconduct was not established. The Department appealed.

---

[2] The review judge adopted all the ALJ's findings and conclusions. We refer to them as the commissioner's findings and conclusions.

ANALYSIS

A. Misconduct

The issue is whether the commissioner erred in deciding Mr. Michaelson's three accidents constituted misconduct disqualifying him from unemployment benefits.

1. Standard of Review. Washington's Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of employment benefits decisions. *Griffith v. State Dep't of Emp't Sec.*, 163 Wn. App. 1, 6, 259 P.3d 1111 (2011). "The [ ]APA allows a reviewing court to reverse an administrative decision when, *inter alia*: (1) the administrative decision is based on an error of law, (2) the decision is not based on substantial evidence, or (3) the decision is arbitrary or capricious." *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993) (citing RCW 34.05.570(3)).

We, like the superior court, apply APA standards to the administrative record. *Id.* We review the commissioner's decision, not the ALJ's decision or the superior court's ruling. *Markam Group, Inc. v. Dep't of Emp't Sec.*, 148 Wn. App. 555, 560, 200 P.3d 748 (2009). We review the underlying ALJ decision to the extent it is adopted by the commissioner. *Griffith*, 163 Wn. App. at 6. We consider the commissioner's decision prima facie correct. *Id.* The burden of demonstrating the decision's invalidity is on the party asserting invalidity. *Id.* We review the commissioner's fact findings for substantial evidence in light of the whole record. *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 32, 226 P.3d 263 (2010). "Substantial evidence is evidence that would persuade a fair-minded person of the truth or correctness of the matter." *Id.* at 32-33. We defer to

4

factual decisions and view the evidence in the light most favorable to the party who prevailed in the highest forum with fact-finding authority; here, this is the Department. *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). As such, we "will not substitute [our] judgment on witnesses' credibility or the weight to be given conflicting evidence." *W. Ports Transp., Inc. v. Emp't Sec. Dep't*, 110 Wn. App. 440, 449, 41 P.3d 510 (2002). "Unchallenged findings of fact are generally verities on appeal." *Griffith*, 163 Wn. App. at 6. We review the commissioner's legal conclusions for legal errors. *Id.* While we may substitute our view for the commissioner's, we nonetheless give "substantial weight to the [c]ommissioner's interpretation due to the agency's special expertise." *Id.* at 6-7 (internal quotation marks omitted).

Whether an employee's actions constitute misconduct is generally a mixed question of fact and law. *Markam*, 148 Wn. App. at 561. "When reviewing mixed questions of law and fact, we accept the [c]ommissioner's unchallenged factual findings, apply the substantial evidence standard to the challenged findings of fact, independently determine the applicable law, and apply the law to the facts." *W. Ports Transp., Inc.*, 110 Wn. App. at 450 (stating application of law to facts is de novo). Thus, we determine if substantial evidence supports the commissioner's factual findings, and if so, if these facts constitute disqualifying misconduct under the Employment Security Act.

2. Factual Findings. Mr. Michaelson challenges portions of the commissioner's finding of fact 4 and 8. In finding of fact 4, the commissioner found Mr. Michaelson "was

involved in a preventable accident" on May 19, 2012. CP at 79. Mr. Michaelson contends that accident was not his fault. It is undisputed that Mr. Michaelson had to be aware of his surroundings and use the GOAL method to ensure he safely reversed. In its post-accident investigation, FSA determined Mr. Michaelson failed to adequately comply with FSA's safety procedures when he hit a stationary vehicle positioned behind his vehicle. FSA paid to repair the damaged car. The commissioner gave more weight to FSA's version of the conflicting testimony; we do not substitute our judgment.

In finding of fact 8, the commissioner found FSA discharged Mr. Michaelson "from employment for his third preventable accident during a one year period." CP at 79. Mr. Michaelson mainly disputes the description "preventable." However, all three accidents were preventable. Substantial evidence supports the commissioner's finding that the first accident was preventable. Mr. Michaelson admitted liability for the second accident. The third accident was preventable because had he examined the trailer before lowering it, as was dictated by FSA's policy, he would have noticed the trailer lowered substantially more than other trailers he drove. Thus, this finding is supported by substantial evidence.

3. Legal Conclusions. Absent a statutory disqualification, unemployed workers are generally eligible for benefits. *Griffith*, 163 Wn. App. at 8. "Construction of the benefits statute which 'would narrow the coverage of the unemployment compensation laws' is viewed 'with caution.'" *Id.* (quoting *Shoreline Comm. College Dist. No. 7 v.*

6

*Emp't Sec. Dep't*, 120 Wn.2d 394, 406, 842 P.2d 938 (1992)); *see also* RCW 50.01.010

(stating the Employment Security Act "shall be liberally construed").

An employee is not entitled to unemployment benefits if he is discharged from

employment for misconduct. RCW 50.20.066(1). In relevant part, "misconduct" is

defined as "[c]arelessness or negligence of such degree or recurrence to show an

intentional or substantial disregard of the employer's interest." RCW 50.04.294(1)(d).

"'Carelessness' and 'negligence' mean failure to exercise the care that a reasonably

prudent person usually exercises." WAC 192-150-205(3). RCW 50.04.294(3) excludes

the following acts from the definition of misconduct:

> (a) Inefficiency, unsatisfactory conduct, or failure to perform well as the
>     result of inability or incapacity;
> (b) Inadvertence or ordinary negligence in isolated instances; or
> (c) Good faith errors in judgment or discretion.

The parties disagree about whether or not Mr. Michaelson's accidents constituted

misconduct. The Department relies on *Markam* and *Smith*. The holding in *Markam* is

that an employee's inability to perform work, regardless of how many mistakes were

made, is not misconduct. *Markam*, 148 Wn. App. at 564. *Markam* is inapplicable, as

neither party argues Mr. Michaelson was unable to perform his job.

In *Smith*, the court found a county employee engaged in misconduct when he

recorded his conversations with members of the public without the public's knowledge

and consent because this potentially damaged the county's reputation. *Smith*, 155 Wn.

App. at 36. The *Smith* court determined the commissioner's conclusion deciding the

employee's conduct disregarded the county's interest because it exposed the county to

litigation and liability, as well as impacted citizens' willingness to discuss issues, was not arbitrary or capricious. *Id.* at 36-37.

Similar to *Smith*, Mr. Michaelson disregarded FSA's interests by exposing FSA to litigation and liability. But the employee's actions in *Smith* were not ordinary negligence; the *Smith* court found the employee "intentionally performed an act in willful disregard for its probable consequences." *Smith*, 155 Wn. App. at 37. Mr. Michaelson had three chargeable accidents in the last year of his employment and just one in the nine previous years. At most Mr. Michaelson failed to exercise ordinary negligence, the care a reasonably prudent person would have exercised in similar circumstances. The record lacks evidence to support a conclusion that Mr. Michaelson's carelessness or negligence was of "such degree or recurrence to show an intentional or substantial disregard of [FSA's] interest." RCW 50.04.294(1)(d). Nothing indicates Mr. Michaelson's behavior was willful, reckless, or even grossly negligent. Although Mr. Michaelson's carelessness or negligence in the last year of his employment justified his discharge according to FSA policy, considering his long, generally good driving record, we cannot say his chargeable accidents evidence the necessary misconduct to disqualify him from receiving unemployment benefits.

## B. Attorney Fees.

Mr. Michaelson requests reasonable attorney fees pursuant to RCW 50.32.160, RCW 50.32.100, and RCW 4.84.010. RCW 4.84.010(6) allows a prevailing party to recover statutory attorney fees. Under RCW 50.32.160, unemployment benefits

8

No. 33011-7-III
*Michaelson v. Emp't Sec. Dep't*

claimants are entitled to reasonable attorney fees and costs if the decision of the

commissioner is reversed or modified on appeal. "The purpose of [RCW 50.32.160],

when read with RCW 50.32.100 and RCW 50.32.110, is to provide for regulation of

attorney fees incurred in relation to administrative or court proceedings." *In re Griswold*,

102 Wn. App. 29, 46-47, 15 P.3d 153 (2000) (internal quotation marks omitted).

Because he prevails here, Mr. Michaelson is entitled to attorney fees and costs on

appeal under RCW 50.32.160, assuming compliance with RAP 18.1(d).

Reversed.

Brown, J.

I CONCUR:

Siddoway, C.J.

9

33011-7-III

FEARING, J. — (concurring) I concur. Three negligences do not make a misconduct.

I CONCUR:

_____
Fearing, J.